IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| RHONDA B. POWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  2:12cv440-WHA |
| | ) | |
| JACK DOANE, DAVID PERRY, and | ) | (wo) |
| REX MCDOWELL, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is before the court on a Motion for Summary Judgment filed by the Defendants (Doc. #32), and two Motions to Strike filed by the Plaintiff (Doc. #37, 38).

The Plaintiff filed a Verified Complaint in May of 2012, bringing a 42 U.S.C. § 1983 claim for retaliation in violation of her First Amendment to the United States Constitution right to freedom of speech (Count I) and a state law claim for violation of the Alabama Whistleblower Statute (Count II).  The court has federal question subject matter jurisdiction over the federal claim and can exercise supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367(a).

The Defendants moved for summary judgment as to all claims.  In addition to responding to that motion, the Plaintiffs moved to strike some of the Defendants' evidence offered in support of summary judgment.

For the reasons to be discussed, the Motions to Strike are due to be DENIED in part and DENIED as moot in part, and the Motion for Summary Judgment is due to be GRANTED as to

the federal claim, and the state law claim dismissed without prejudice.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A),(B). Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be

believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

### III.  FACTS

Plaintiff Rhonda Powell ("Powell") began working in the Alabama Finance Department as an Executive Secretary in 2006 when she was appointed to that non-merit system position by the Director of Finance. This was a change from her merit system classification and came with an increase in salary. At that time, the Director of Finance was James Main and Powell's supervisor was Jim Burns.

In 2009, William Newton ("Newton") became Acting Finance Director. Defendant Rex McDowell ("McDowell") was hired as Assistant Director of Finance over Information and Administrative Services and moved into Jim Burns's ("Burns") office. Burns moved into another room. Newton decided to appoint a different Executive Secretary. In September 2009, Powell was removed from the Executive Secretary position and reverted to her merit system classification of ASA III. The change in position resulted in a 5% pay decrease. Defendant Jack Doane ("Doane"), Chief Information Officer for the Information Systems Division of the Finance Department, then became Powell's supervisor.

Defendant David Perry ("Perry") subsequently was named Director of Finance.

In February 2011, Powell completed a memorandum regarding a promotion to a Departmental Operations Specialist position.

3

On March 3, 2011, Doane completed Powell's annual performance appraisal and gave her a 22.9 "meets standards." Powell wrote a rebuttal to her appraisal. On March 15, 2011, McDowell signed off on the appraisal as the reviewing supervisor.

Doane has stated in an affidavit that he made a decision to reassign Powell before March of 2011. He has stated that the decision was made as early as January of 2011. (Doc. #33-2 at ¶9).

On March 18, 2011, Doane prepared a draft letter reassigning Powell to a division within Information Services Division, but did not give her the letter, instead leaving it face down on his desk. Later that day, another employee named Art Bess told Doane that Powell said she had seen a document on Doane's desk which indicated that she was to be moved. (Doc. #33-4 at ¶ 3).

On March 18, 2011, Powell went to the State of Alabama Ethics Commission ("Ethics Commission") and picked up a complaint form. She filed a complaint ("Ethics Complaint") on March 23, 2011, alleging that Assistant Director McDowell had been illegally running a personal business during normal working hours.

Powell states that on March 24, 2011, she was told that she would be reassigned. On March 28, 2011, Director Perry notified Powell in writing that she was reassigned effective March 29, 2011. After the reassignment, Powell's supervisor was Julie Robertson.

On March 28, 2011, Powell contacted the Ethics Commission to complain that she was being moved because she filed a complaint. On July 15, 2011, Powell filed a Charge of Discrimination with the EEOC, which she amended in August of 2011.[1]

---

[1] Powell's EEOC charge is for age discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA"). (Doc. #36-15, 36-16). There are no ADEA claims in this litigation.

4

## IV. DISCUSSION

The Defendants move for summary judgment, providing the affidavits of Doane, McDowell, Perry, and Elizabeth Allen, among other evidence.

In response, Powell has not objected to Perry's or Elizabeth Allen's affidavits, but has moved to strike the affidavits of Doane and McDowell. Before addressing the merits of the claims, therefore, the court will address Powell's Motions to Strike.

### A. Motions to Strike

While Powell has moved to strike the affidavits of Doane and McDowell, as to the majority of the paragraphs in those affidavits, Powell states only general grounds. She presents specific arguments only as to paragraphs 6, 7, 8, 10, and 14 of Doane's affidavit, and paragraphs 5, 6, 7, 8, and 10 of McDowell's affidavit. Powell's general objections to the affidavits are that the Defendants offered these affidavits rather than Doane's or McDowell's deposition testimony to support their Motion for Summary Judgment, that evidence must be relevant to be admissible, and that conclusory statements and statements not based on personal knowledge are not admissible. Powell cites no authority for her apparent argument that the mere fact that a deposition was taken of Doane and McDowell means that the Defendants cannot rely on affidavits to support their Motion for Summary Judgment. Because the use of affidavits is permitted by Fed. R. Civ. P. 56, the affidavits are not due to be stricken on that basis. In addition, the court will only consider statements within the affidavit which are relevant, not conclusory, and are within the personal knowledge of the affiants. The Motions to Strike, to the extent that they are based on these general grounds, are due to be DENIED as to the argument that affidavits rather than depositions have been offered, and DENIED as moot as to objections

to relevance, conclusory statements, and being beyond personal knowledge.

With respect to paragraph 10 of McDowell's affidavit, Powell states the specific objection that the paragraph is irrelevant and speculative because it states that Powell engaged in disruptive behavior and gives no date for that behavior. Powell does not articulate an objection to other statements in the paragraph, however, such as the statements that Doane told McDowell that he was reassigning Powell, and that the reassignment decision was part of a larger reorganizational plan. (Doc. #33-3 at ¶10). These latter statements are both relevant, and within McDowell's personal knowledge, and, therefore, the Motion to Strike is due to be DENIED as to this aspect of paragraph 10.

The court will consider the portions of Doane's and McDowell's affidavits to which Powell has made only general objections, which are not well-taken; the portion of paragraph 10 of McDowell's affidavit which describes the reassignment decision; and Elizabeth Allen's and Perry's affidavits in addressing the merits of Powell's claims.[2]

B.  Powell's Claims

**Federal Claim**

Powell brings a First Amendment free speech retaliation claim under 42 U.S.C. §1983, alleging that her reassignment to a different office in March was in retaliation for her having contacted, and filed a complaint against McDowell with, the State Ethics Commission. The Defendants invoke qualified immunity.

---

[2] The court has not considered the paragraphs of the affidavits specifically objected to in the Motions to Strike, including the sentence of paragraph 10 of McDowell's affidavit regarding disruptive behavior, and, therefore, the Motions to Strike are due to be DENIED as moot as to those paragraphs of Doane's and McDowell's affidavits.

Qualified immunity is a protection designed to allow government officials to avoid the expense and disruption of trial. *Ansley v. Heinrich*, 925 F.2d 1339, 1345 (11th Cir.1991). As a preliminary matter, the court must determine whether the public official was acting within the scope of his discretionary authority at the time the allegedly wrongful acts occurred. *See Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988). There is no dispute that the Defendants in this case were acting within their discretionary authority. Once it is established that a defendant was acting within his discretionary authority, the court must determine whether "[t]aken in a light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "[I]f a constitutional right would have been violated under the plaintiff's version of the facts," the court must then determine "whether the right was clearly established." *Wood v. Kesler,* 323 F.3d 872, 878 (11th Cir. 2003).

 Requiring that a constitutional right be clearly established means that liability only attaches if "[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *United States v. Lanier*, 520 U.S. 259, 270 (1997). In other words, a defendant is entitled to "fair warning" that his conduct deprived his victim of a constitutional right. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

The court begins with the issue of whether a constitutional violation has been established by Powell based on the claim in Count I of the Verified Complaint. To establish a First Amendment free speech retaliation claim, a plaintiff must show that "(1) her speech was constitutionally protected; (2) she suffered adverse conduct that would likely deter a person of ordinary firmness from engaging in such speech; and (3) there was a causal relationship between

7

the adverse conduct and the protected speech." *Castle v. Appalachian Technical College,* 631 F.3d 1194, 1197 (11th Cir. 2011). In order to establish a causal connection, the plaintiff must show that the defendant was subjectively motivated to take the adverse action because of the protected speech. *Id.*

In analyzing causation for purposes of a First Amendment claim, the Eleventh Circuit has at times relied on Title VII retaliation cases. *See Akins v. Fulton Co., Ga.*, 420 F.3d 1293, 1305 (11th Cir. 2005) (citing *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000)). In those cases, a plaintiff must show "that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir.2000).[3] Under that analysis, employment actions which pre-date protected activity necessarily cannot be caused by that activity. *See Schecter v. Georgia State Univ.*, 341 F. App'x 560, 563 (11th Cir. 2009).

1. Powell's Claim that her Reassignment Was in Retaliation for an Ethics Complaint

The Defendants state that Powell cannot establish the causation or adverse action elements of a First Amendment retaliation claim. With respect to causation, the Defendants argue that there is no evidence that Doane made the decision to reassign Powell because of her Ethics Complaint. The Defendants also state that Powell lacks any evidence that Perry and McDowell had any knowledge of her protected speech until after the reassignment was completed. Perry states that he had no knowledge of any Ethics Complaint brought by Powell

---

[3] The court finds these cases applicable in the First Amendment context although Title VII retaliation analysis has been modified in *Univ. of Tex. Sw. Med. Ctr v. Nassar*, _ U.S. _, 133 S.Ct. 2517 (2013). *See Mooney v. Lafayette Cnty. Sch. Dist.,* No. 12-60753, 2013 WL 4018662, at *4, n.4 (5th Cir. Aug. 8, 2013).

prior to March 29, 2011.  (Doc. #33-1 at ¶6).  McDowell also states that at no time prior to March 29, 2011 did he know that Powell had any intention to make a complaint with the Ethics Commission.  (Doc. #33-3 at ¶11).  Doane states that he made the decision to reassign Powell as early as January 2011 at a time in which he began to develop different reorganization plans, all of which included moving Powell to a different section.  (Doc. #33-2 at ¶9).  Doane states that the decision to make a change in Powell's work assignment area was made months before a draft memo dated March 18, 2011.  (Doc. #33-2 at ¶12).   The Defendants have also presented evidence that Powell's reassignment in 2011 did not change her merit system classification, compensation, or benefits, or substantially change her job responsibilities.  (Doc. #33-12 at ¶3,4).

Powell has pointed to no evidence to dispute that the decision to reassign her had been made before she voiced a complaint with the Ethics Commission in March 2011, or to dispute evidence of when Perry and McDowell had knowledge of her complaint.  Based on the undisputed evidence before the court, Doane made the decision to reassign Powell before she voiced any Ethics Complaint, and neither McDowell nor Perry was aware of her contacting the Commission and filing her Ethics Complaint until after the reassignment decision had been made.  Therefore, Powell has failed to establish causation.  *Brungart*, 231 F.3d at 799.

While it is not clear, it appears that Powell's theory is that she filed her initial Ethics Complaint on March 24, and then her employment was transferred on March 28, and that the close temporal proximity of those events is sufficient to establish causation.  In light of the affirmative evidence that the decision to reassign Powell was made prior to any March complaint, however, Powell's argument does not establish causation, because the decision maker must be aware of the protected activity at the time the decision is made.  *See Schecter*, 341 F.

9

App'x at 563; *see also Drago v Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) (holding "when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation"). Summary judgment is, therefore, due to be GRANTED as to Powell's claim that her work assignment was changed in retaliation for her filing an Ethics Complaint against McDowell.

Powell has also argued in her brief that contact with the media, including speaking to a news reporter named Bob Lowry, was protected activity. She also mentions in her brief that she complained to various elected officials.[4] While it is not entirely clear what the scope of these claims is, the court now turns to these First Amendment claims identified in brief by Powell.

2. Claim Based on Speaking With the Media

Powell has stated in her brief that she spoke with the media about McDowell, but it is not clear what employment action she says was taken in retaliation for that speech.[5] She has referred

---

[4] While there is also some discussion in Powell's brief of internal complaints to Doane and McDowell, it does not appear that Powell contends that these were a matter of public concern. *See Badia v. City of Miami,* 133 F.3d 1443, 1445 -1446 (11th Cir.1998) (identifying private grievances seeking redress for personal harm as distinct from matters of public concern). In any event, they are not identified in the Verified Complaint, and, as is discussed below, are not properly the basis of any claims in this case.

[5] Powell also has stated in brief that she suffered, and referred to in her Verified Complaint to, an adverse employment action when her Executive Secretary position was taken away and her pay rate was reduced in 2009. The Verified Complaint, however, does not base a claim on that.
   The Defendants argue that she cannot rely on the demotion and decrease in pay in 2009 because such a claim would be time-barred, even if actually set out as a claim in the Verified Complaint.
   Summary judgment is due to be GRANTED as to any claim based on the 2009 demotion because it occurred more than two years prior to the filing of the Verified Complaint, and so is barred by the statute of limitations. *See Lufkin v. McCallum*, 956 F.2d 1104, 1106 (11th Cir.),

in her brief to her change of assignment in March 2011, to a poor evaluation March 3, 2011, and to her completion in February 2011 of memorandum about a promotion opportunity to Department Operations Specialist.  The Defendants argue that they were not given adequate notice of a claim based on contact with the media in the Verified Complaint in this case.

The liberal pleading standard for civil complaints under Federal Rule of Civil Procedure 8(a) "does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage."  *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004).  A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.  *Id.* at 1315.

The Verified Complaint filed in this case does not refer in any way to speaking to the media as a protected activity, to Powell's performance appraisal in March of 2011, or to her pursuit of a promotion in February of 2011.  The Verified Complaint instead specifically identifies Powell's Ethics Complaint as the protected activity, and the employment reassignment as an adverse employment action.  The time for amendment having passed in this case, (Doc. #15), summary judgment is due to be GRANTED as to any claim based on speaking with the media.

Even assuming that Powell timely alleged a claim based on speaking with the media, the Defendants argue that Powell can offer no evidence that the Defendants knew of any contact with the media before the decision was made reassign Powell.

Powell cites to her deposition to support that she spoke with Bob Lowry, a news reporter.  In her deposition, she states that she met with him one time (Doc. #36-1 at p. 207:14-16), but

---

*cert. denied*, 506 U.S. 917 (1992).

does not recall the date and time that she met with Bob Lowry, and cannot recall whether it was after her Ethics Complaint was filed. (Doc. #36-1 at p. 212: 12-17). The documentary evidence she has cited in support of her claim is a newspaper article written by Bob Lowry which is dated September 6, 2011 (Doc. #36, Ex. 6). She has also cited to McDowell's deposition testimony in which he is asked about an article dated May 27, 2011. (Doc. #36-3 at p. 40:20-41:6).

The court cannot conclude that Powell has established that she spoke with a member of the media before the decision was made to reassign her employment, before the evaluation of Powell in March of 2011, or before Powell pursued a promotion to a Department Operations Specialist position in February 2011. Powell also has not pointed to evidence of knowledge on the part of the Defendants that she spoke with any member of the media at the time any employment decisions were made. Powell, therefore, has failed to create a question of fact as to causation, even if she had timely brought a First Amendment claim based on contact with the media, and summary judgment is due to be GRANTED on that alternative basis.

    3. Claim Based on Speaking with Elected Officials

Powell states in her brief that she voiced complaints to Steve Windom, Senator Bill Brewbaker, Representative Barry Mask, and that she attempted to contact the Governor's office. Again, there is no reference to these complaints in her Verified Complaint, and summary judgment is due to be GRANTED on any claim based on these complaints on that basis.

Furthermore, the portions of her deposition which she has cited in support of her argument state only that she had not talked with Steve Windom within six months prior to her deposition (Doc. #36-1 at p. 214:8-19), that she attempted to make an appointment with the Governor's office (Doc. #36-1 p. 195: 6-12), and that she met with Senator Brewbaker about the

decision to move her. (Doc. #36-1 at p. 331:16-332:1). The court has been pointed to no evidence that contact with these persons occurred before the decision was made to reassign Powell. Furthermore, Powell has not pointed to evidence of knowledge of any the Defendants of any contact with elected officials. Therefore, even if summary judgment were not due to be granted because this claim was not brought in the Verified Complaint, Powell has failed to create a question of fact as to causation, and summary judgment is due to be GRANTED on that alternative ground.

### State Law Claim

The Defendants have also moved for summary judgment as to Powell's state law claim based on the Alabama Whistleblower Statute. The court can exercise supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367, but the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when ... the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004); *see also* 28 U.S.C. § 1367(c). "Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction." *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1352 (11th Cir. 1997). Taking into account the relevant considerations, the court declines to exercise supplemental jurisdiction over the state law claim. *See Ingram v. Sch. Bd. of Miami–Dade Cnty.*, 167 F. App'x 107, 108 (11th Cir.2006) (reviewing a court's decision not to exercise jurisdiction over state law claims and noting "state courts, not federal courts, should be the final arbiters of state law.").

### V. CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

1.  The Motions to Strike (Doc. #37, 38) are DENIED in part and DENIED as moot in part, as stated above.

2.  The Motion for Summary Judgment (Doc. #32) is GRANTED as to the federal claim in Count I of the Verified Complaint.

3.  Pursuant to 28 U.S.C. § 1367(c), the court declines to exercise supplemental jurisdiction over the state law claim in Count II.

A separate Judgment will be entered in accordance with this Memorandum Opinion and Order.

Done this 23rd day of August, 2013.

/s/ W. Harold Albritton
W.  HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE